**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GPI, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PATRIOT GOOSE CONTROL INC., *et al.*,<br><br>Defendants. | Civil Action No. 23-20953 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff GPI, LLC's ("GPI" or "Plaintiff") motion for a preliminary injunction against Defendants Patriot Goose Control, Inc., and Elliot Oren (collectively "Patriot Goose" or "Defendants"). (ECF No. 7.) Patriot Goose opposed the motion (ECF No. 49), and GPI replied (ECF No. 50). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, GPI's motion is granted.

### I.       BACKGROUND

By way of the instant motion, GPI (a Canadian goose control franchise) seeks injunctive relief to protect its intellectual property, including trademarks and service marks, from Patriot Goose (a former franchisee) and to enforce a non-compete provision contained within the parties' Franchise Agreement. (*See generally* Compl., ECF No. 1; Pl.'s Moving Br., ECF No. 7.)

As set forth in the Complaint, GPI is a franchisor of a franchising system that is comprised of "distinct formats, designs, specifications, methods, standards, operating procedures, and

guidance" for Canadian goose control franchises. (Compl. ¶ 11.) At the heart of GPI's system is the use of "highly trained border collies" to herd Canadian geese off client property in a "waterfowl friendly manner" (the "Franchised Business"). (*Id.*)

As a franchisor, GPI provides its franchisees[1] with a comprehensive system, including its business methods, experience, expertise, and the "know how" of operating a successful franchise (the "Geese Police System").[2] (*Id.* ¶ 21.) Since August 2000, Geese Police, Inc. has provided GPI with a license to utilize its trademarks and service marks, which GPI has continuously used to identify the Franchised Business. (*Id.* ¶ 15.) GPI's primary trademark is the composite of words under the following design:



GPI also holds a license for two additional trademarks and service marks: (1) "CALL US TO . . . GET THE FLOCK OUT!®" and (2) GEESE POLICE®.[3] (*Id.* ¶¶ 13, 16-18.) GPI alleges

---

[1] GPI has nine franchisees in the United States, excluding Patriot Goose. (Compl. ¶ 12.)

[2] The Geese Police System provides other benefits to franchisees such as: (a) "providing initial, additional, and refresher training, along with periodic courses and seminars" on how to chase geese away in a "lawful manner"; (b) "making available . . . advertising and promotional materials"; (c) providing manuals and periodic updates with "Geese Police standards, specifications, procedures, and operating techniques"; (d) maintaining a continuing advisory relationship, including written communication and telephone consultation in the areas of advertising, marketing, training and dog care . . . ."; and (e) hosting a website listing current franchise locations and contact information to allow potential customers to get in touch with GPI for services in their location. (Compl. ¶ 22.)

[3] The Court refers to all three marks collectively as the "Geese Police Marks." (Compl. ¶ 19.)

that it has expended considerable resources and developed a "valuable goodwill" throughout the United States among consumers for its Geese Police Marks—all of which are "proprietary and comprise the Geese Police System." (*Id.* ¶¶ 24-25; *see also* Pl.'s Moving Br. 3, ECF No. 7-1.)

## A.   Patriot Goose Franchise

Defendant Elliot Oren ("Oren")—the President of Patriot Goose—entered a franchise agreement (the "Franchise Agreement")[4] with GPI on or about July 21, 2014. (Compl. ¶ 32; *see also* Decl. of Elliot Oren ["Oren Decl."] ¶ 2, ECF No. 49-1.) From that point forward until July 2021, Patriot Goose operated as a franchisee, seemingly without incident.[5] (Compl. ¶ 33; *see also* Oren Decl. ¶ 4.) Under the Franchise Agreement, Patriot Goose would conduct business operations in several counties throughout the greater Boston area, namely:

> Suffolk, Norfolk, Middlesex Counties, eastern half of Worchester County (East of Routes 290/190)[,] and northern halves of Bristol and Plymouth Counties (going north across the counties from Providence to Middleboro to Manomet (collectively, the "Protected Territory").

(Franchise Agreement, § 1.3.) GPI and Oren entered the last two-year renewal of the Franchise Agreement from July 2021 to July 2023, under the same terms and conditions as their initial agreement. (Compl. ¶ 31; Pl.'s Moving Br. 5.)

During its tenure as a franchisee, GPI provided Patriot Goose with: (1) a copyright-protected operating manual; (2) business support via telephone and email with GPI's founder; (3) periodic visits aimed at increasing business opportunities; (4) regularly scheduled

---

[4] The Franchise Agreement is annexed to the Complaint as Exhibit D, ECF No. 1-4. Although Oren executed the agreement, the Franchise Agreement identifies the entities to the agreement as GPI and Patriot Goose. (Franchise Agreement, 1.)

[5] The parties renewed the Franchise Agreement numerous times since Patriot Goose became a franchisee. (Pl.'s Moving Br. 5.)

sales demos for prospective clients; and (5) an affiliated e-mail address. (Compl. ¶ 38.) In addition, GPI granted Patriot Goose with the right to use the Geese Police Marks. (*Id.* ¶ 35.) In exchange, Patriot Goose agreed to deliver monthly reports and pay a monthly royalty fee to GPI, and further agreed to "cease operating the Franchised Business and . . . using the Geese Police System and Geese Police Marks upon termination of the Franchise Agreement." (*Id.* ¶ 36.)

**B.    The Franchise Agreement**

*i.    Termination*

Annexed to GPI's Complaint is a copy of the parties' Franchise Agreement. (*See* Franchise Agreement.) Section 15 of the Franchise Agreement—titled "Obligations Upon Termination or Expiration"—states that, "[u]pon termination or expiration of [the Franchise Agreement], all rights granted hereunder to [Patriot Goose] shall . . . terminate." (Franchise Agreement § 15.) This Section also states that Patriot Goose shall "immediately and permanently cease to operate the Franchised Business, and shall not, thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of [GPI]." (*Id.* § 15.1.) Finally, the Section provides that "[Patriot Goose] shall immediately cease to use, in any manner whatsoever, any confidential methods, procedures, and techniques associated with the [Geese Police System] and . . . all other [p]roprietary [m]arks . . . associated with the [Geese Police System]." (*Id.* § 15.2.)

*ii.    Restrictive Covenant*

Highly relevant to this dispute is a covenant not to compete (the "non-compete clause")—located in Section 16.3 of the Franchise Agreement—which reads as follows:

> [Patriot Goose] shall not, for a continuous uninterrupted period of two (2) years commencing upon . . . expiration of this Agreement. . . . either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or legal entity, own, maintain, operate, engage in, be employed by, provide assistance to, or have any interest in (as owner or otherwise) any business that:

4

> (i) involve the inhabitation of property by, and control of, birds and waterfowl; and (ii) is, or is intended to be, located at or within: [(a)] the county or municipality in which the Approved Location is located; or [(b)] the Protected Territory; or [(c)] one hundred fifty (150) miles of the Approved Location; or [(d)] one hundred fifty (150) miles[6] of any business operating under the Proprietary Marks[.]

(*Id.* § 16.3.) This covenant survives expiration, termination, or assignment of the Franchise Agreement. (*Id.* § 23.2.)

> ### iii.    Arbitration Provision

The Franchise Agreement also contains "Dispute Resolution" procedures for resolution of claims, disputes, or controversies. (*Id.* § 25.) Section 25.4 states:

> [I]n the event that any dispute or claim hereunder has not been successfully resolved through mediation . . . all disputes or claims relating to this Agreement, the rights and obligations of the parties hereto, or any other claims or causes of action relating to the making, interpretation, or performance of either party under this Agreement, shall be settled solely and exclusively by final and binding arbitration at the office of [Judicial Arbitration and Mediation Services, Inc.] ["]JAMS["].

(*Id.* § 25.4.)

The Dispute Resolution procedures go on to state, however, that "[n]othing herein contained shall bar [GPI's] right to obtain injunctive relief against threatened conduct that will cause it loss or damage, under the usual equity rules . . . for obtaining specific performance, restraining orders, and preliminary injunctions." (*Id.* § 25.7.) For such equitable claims, the parties "irrevocably consent[] and submit[] to the United States District Court for the District of New

---

[6] GPI alleges that this 150-mile radius "has a nexus to the driving distance able to or typically covered by franchisees on their routes." (Compl. ¶ 63, n.1.)

5

Jersey . . . over all Non-Mediation Matters"[7] and agree that venue is proper in this Court over "Non-Mediation Matters." (*Id.* § 25.9.)

## C.    Events Preceding Termination

A month before the Franchise Agreement expired on July 20, 2023, GPI received correspondence from Patriot Goose's counsel stating that GPI's failure to "provide training, marketing, . . . written advice on the conduct of the business, as well as to conduct period[ic] inspections" rendered the Franchise Agreement's post-termination restrictions "null and void" as of its end date. (Compl. ¶ 42.) Patriot Goose also asserted that the non-compete clause within the Franchise Agreement was overly broad and inclusive. (*Id.*)

GPI attempted to informally resolve the dispute by contacting Oren directly. (*Id.* ¶ 43.) GPI's outreach was of no avail—Oren responded to GPI with the same arguments. (*Id.*) In subsequent correspondence on August 16, 2023, GPI reminded Patriot Goose of the post-termination obligations outlined in the Franchise Agreement—including the non-compete clause. (*Id.* ¶ 44.)

## D.    Alleged Violations of the Franchise Agreement

The Franchise Agreement expired on its own terms on July 20, 2023. (*Id.* ¶ 41.) Despite its termination, GPI alleges that Patriot Goose continued to use the Geese Police System in the Protected Territory, refused to dissociate as a franchisee, continued to use Geese Police Marks,

---

[7] The Franchise Agreement defines "Non-Mediation Matters" in relevant part as "(i) *disputes, whether between Franchisor and Franchisee or with third parties, relating to Franchisor's right to license, and Franchisee's use of, the Proprietary Marks or the [Geese Police] System*" and "*(ii) suits to enforce the in-term and post-termination competition agreements of [Patriot Goose].*" (*See* Franchise Agreement § 25.3 (emphasis added).) Because the instant lawsuit falls within the category of a "Non-Mediation Matter," it is not subject to the arbitration provision detailed at Section 24.4. Patriot Goose's contention that the claims at issue in this litigation are subject to the arbitration provision is thus without merit. (Def.'s Opp'n Br. 20-22.)

and has not refrained from engaging in a competing business with GPI.[8] (*Id.* ¶ 46.) To support its position, GPI has attached to the Complaint, photographs from Patriot Goose's social media pages showing that it has continued to use the name "Geese Police" and the Geese Police Marks. (*Id.* ¶¶ 52-54.)

Patriot Goose denies that it continued to use the Geese Police Marks because approximately one month after notifying GPI that it would not renew the Franchise Agreement, Patriot Goose has, among other things, (1) "removed all use of the [Geese Police Marks]" from its social media, including Facebook, Linkedin, and Instagram; (2) changed the URL for its Facebook to remove the Geese Police; and (3) notified all customers in writing that Patriot Goose was no longer affiliated with Geese Police and had not been using the Geese Police Marks as of July 17, 2023— before the expiration of the Franchise Agreement on July 30, 2023. (Oren Decl. ¶ 8.) In short, Patriot Goose asserts that there is no evidence to suggest that, at the time of this motion, it has continued to use the Geese Police Marks in violation of the Franchise Agreement. (*Id.*)

E.     **Procedural History**

On August 29, 2023, GPI filed its Complaint alleging: (1) Trademark and Service Mark Infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count One); (2) Unfair Competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count Two); (3) Breach of Franchise Agreement – Violation of the Covenant Not to Compete (Count Three); and (4) Breach of Franchise Agreement – Violation of Post-Expiration Obligations (Count Four). (*Id.* ¶¶ 74-102.) On the same day, GPI filed the instant motion for a preliminary

---

[8] GPI alleges, for example, that Patriot Goose continues to use the Geese Police Marks and the Geese Police System through the same customer accounts that it serviced prior to the expiration of the Franchise Agreement. (*Id.* ¶ 51, 62.)

injection. (Pl.'s Moving Br.) Patriot Goose opposed the motion (Def.'s Opp'n Br.) and GPI replied (Pl.'s Reply Br., ECF No. 50).

## II.   <u>LEGAL STANDARD</u>

For a preliminary injunction to be issued, a plaintiff must establish the following four elements: "(1) the plaintiff is likely to succeed on the merits; (2) denying the injunction will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in greater harm to the defendant; and (4) the injunction is in the public interest." *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, No. 14-4984, 2014 WL 5392065, at *2 (D.N.J. Oct. 23, 2014) (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002)). It is well settled that a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). A preliminary injunction is not a proper remedy to prevent the possibility of some remote future injury. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

The first two factors, commonly referred to as the "gateway factors," are the "most critical." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017). Only once these gateway factors are met should a court consider the remaining two factors. *Id.* "A plaintiff's failure to establish any element . . . renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).

## III.   <u>DISCUSSION</u>

GPI contends that a preliminary injunction is warranted based on Patriot Goose's alleged ongoing violations of the post-termination provisions and covenants contained in the Franchise Agreement. (*See generally* Pl.'s Moving Br.) GPI's arguments are two-fold. First, GPI suggests that it has met the threshold requirements for a preliminary injunction as to its claims under the

Lanham Act (Counts One and Two) to enjoin Patriot Goose's use of the Geese Police Marks, which are federally protected trademark and service marks. (*See, e.g.*, Pl.'s Moving Br. 14-16.) Second, GPI contends that a preliminary injunction is warranted insofar that Patriot Goose has openly breached the terms of the Franchise Agreement and, specifically, the non-compete agreement contained therein (Counts Three and Four). (*Id.* at 17.)

The Court will begin with considering GPI's request to enjoin Patriot Goose from using the Geese Police Marks and other trademarks (Counts One and Two). The analysis here will be brief. As of the time of this motion, the Court is not aware of Patriot Goose's *continued* use of the protected trademarks of GPI and Geese Police. Indeed, Patriot Goose appears to concede that it is not entitled to use this intellectual property; and in so doing, has expressly stated that as of the termination date of the Franchise Agreement, it has taken all steps to remove any affiliation that it once had with Geese Police and the Geese Police Marks. (*See, e.g.*, Oren Decl. ¶ 8.) Oren has certified that he "immediately de-branded" and "notified all customers via e-mail" prior to the termination of the Franchise Agreement that Defendants are no longer affiliated with Geese Police. (*Id.*) Patriot Goose thus contends that there is no live controversy as to the use of GPI's marks and this issue is now moot. (Def.'s Opp'n Br. 25.) Based on the representations made in Oren's sworn declaration, the Court finds that the issue is indeed moot. (*Id.*) For the reasons described below, the Court finds that a preliminary injunction is warranted under the non-compete clause. And given that the parties seemingly agree that Patriot Goose's use of the Geese Police Marks is improper, the Court will also grant GPI's request for a preliminary injunction to protect any potential future infringement on the Geese Police Marks and to avoid any potential issues that may arise in the future. *See, e.g.*, *Athlete's Foot Brands, LLC v. Whoooahh, Inc.*, No. 07-333, 2007 WL 2934871, at *3 (D. Idaho Oct. 5, 2007).

Turning to the crux of the motion, the Court considers GPI's request for injunctive relief to enforce the non-compete clause contained in the Franchise Agreement. Under the terms of the Franchise Agreement, New Jersey law applies. (Franchise Agreement, § 25.1.) Applying New Jersey law here, courts often view non-compete covenants in franchise agreements akin to "'agreements ancillary to the sale of a business' in that the franchisee is 'in a more equitable bargaining situation than the typical employer-employee relationship.'" *HouseMaster SPV LLC v. Burke*, No. 12-13411, 2022 WL 2373874, at *10 (D.N.J. June 30, 2022) (quoting *Jiffy Lube Int'l v. Weiss Bros., Inc.*, 834 F. Supp. 683, 691 (D.N.J. 1993)). Courts in this District are therefore more likely to find a restrictive covenant enforceable because "the primary characteristic of a franchise is the license given to the franchisee to trade upon and exploit the franchisor's goodwill." *Id.* at *6 (quoting *Jiffy Lube*, 834 F. Supp. at 691); *see also Sandhills Glob., Inc. v. Garafola*, No. 19-20669, 2020 WL 7029482, at *20 (D.N.J. Nov. 30, 2020) (restrictive covenants are generally enforceable if intended to "protect the 'goodwill' established by the seller and transferred to the buyer" which "includes intangibles like company reputation and customer relationships.") (quoting *Arch Pers. Care Prods., L.P. v. Malmstrom*, 90 F. App'x 17, 21 (3d Cir. 2003))).

The Court finds that the non-compete clause at issue is at least partially enforceable. A restrictive covenant in a franchise agreement is generally upheld where, as here, the franchisee voluntarily entered the agreement, operated under the franchise business without issue for many years, and raised no prior argument that he or she was fraudulently induced in its execution. *See, e.g.*, *HouseMaster*, 2022 WL 2373874, at *6. To this end, GPI is not simply trying to enforce a restrictive covenant to stifle competition, but instead is attempting to protect its goodwill and customer relationships, legitimate interests that it is entitled to protect. *Id.* To the extent that Patriot Goose argues the non-compete clause is overly burdensome, courts can "blue pencil" the

restrictions and modify them, rather than void them altogether. *Solari Indus., Inc. v. Malady*, 264 A.2d 53, 61 (N.J. 1970). The Court, accordingly, does not find that the non-compete clause is void or should be struck in its entirety.

## A.    Likelihood of Success on the Merits

With this background set, the Court considers whether GPI has satisfied each of the four prongs to warrant a preliminary injunction. To be addressed first is whether GPI has shown a likelihood of success on the merits for breach of the Franchise Agreement (Counts Three and Four), which requires GPI to establish that: (1) the parties entered a contract with certain terms; (2) GPI did what the contract required it to do; (3) Defendants breached the contract; and (4) the breach or failure to perform the obligations under the contract caused a loss to plaintiff. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021).

The Court finds that GPI has made the requisite showing. GPI avers, and Patriot Goose does not dispute that, as of the expiration date of the Franchise Agreement, Patriot Goose has "continued to operate the Franchised Business and use the Geese Police System in the Protected Territory . . . and [has not] refrain[ed] from competing in business with [GPI]." (*See* Compl. ¶ 46; *see also id.* ¶ 62 (noting that "Patriot Goose continue[s] to service the same customer accounts using the Geese Police System that they serviced prior to the termination of the Franchise Agreement.").) Indeed, in opposing GPI's motion, Patriot Goose does not contest that it breached the Franchise Agreement or that it has engaged in a competing business within the Protected Territory.[9] (*See* Def.'s Opp'n Br. 18-19.) The Court, accordingly, finds that the allegations in the

---

[9] Patriot Goose instead argues that the restrictions in the non-compete clause are overly broad and must be "blue penciled." (Def.'s Opp'n Br. 18-19.) The blue pencil inquiry, however, does not serve as a barrier to the prospect of GPI's injunctive relief and pertains to the scope of the non-compete clause (to be covered below)—not whether GPI has shown a likelihood of success.

Complaint, which are largely uncontested by Patriot Goose in its opposition brief, suffice in showing a likelihood of success on the merits on GPI's claims for breach of the Franchise Agreement and the non-compete clause.

### B.    Irreparable Harm

Next, GPI must demonstrate that it will suffer irreparable harm if the Court denies its request for an injunction. In assessing irreparable harm, courts are to consider whether monetary damages are inadequate and if a substantial injury to the moving party persists. *Wetter v. Caesars World, Inc.*, 541 F. Supp. 68, 74 (D.N.J. 1982) (quoting *Judice's Sunshine Pontiac, Inc. v. Gen. Motors Corp.*, 418 F. Supp. 1212, 1218 (D.N.J. 1976)). The injury must amount to a potential harm that cannot be redressed by a legal or equitable remedy following a trial and a preliminary injunction "must be the only way of protecting the plaintiff from harm." *Ecosave Automation, Inc. v. Del. Valley Automation, LLC*, 540 F. Supp. 3d 491, 500 (E.D. Pa. 2021) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)). A finding of irreparable harm may include "loss of control of reputation, loss of trade, and loss of goodwill." *Richardson v. Cascade Skating Rink*, No. 19-8935, 2022 WL 833319, at *4 (D.N.J. Mar. 21, 2022) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990)). Irreparable harm can also be shown based on the likelihood of causing confusion. *Id.* (quoting *Opticians Ass'n of Am.*, 920 F.2d at 196).

Where, as here, a non-compete provision is at issue, courts have found that "a former franchisee's operation of a similar or the same business following termination of the franchise agreement results in irreparable harm to the franchisor." *Ledo Pizza Sys., Inc. v. Singh*, 983 F. Supp. 2d 632, 642 (D. Md. 2013); *see also HouseMaster*, 2022 WL 2373874, at *8 (finding irreparable harm where a franchisee "continued performing inspections in and near his old territory

for nearly a year after terminating the [f]ranchise [a]greement."); *JTH Tax, Inc. v. Geraci*, No. 14-236, 2014 WL 4955373, at *8 (E.D. Va. Oct. 2, 2014) (noting that "[n]o amount of damages can quantify the potential loss to [a franchisor's] goodwill and its reputation, and failure to enforce the non-compete could send a dangerously damaging signal to other franchisees.").

The Court agrees with GPI that it would be left without an adequate remedy at law to address the alleged violations in question. Despite Patriot Goose's post-termination obligations, GPI alleges that Patriot Goose continues to operate a competing goose control business within the Protected Territory that is prescribed in the non-compete clause. (Compl. ¶¶ 46, 62, 64, 69.) Absent injunctive relief, GPI contends that it will lose the ability to control and enforce the Franchised Business's operations, standards, and procedures in the Protected Territory, and that its customers will be deceived into believing that Patriot Goose's competing business is an authorized Geese Police franchise, when, in fact, it is not. (Pl.'s Moving Br. 20; *see also* Compl. ¶ 68.) Violations of the non-compete provision could very well "endanger[] the satisfaction and expectations of [GPI's] customers, dilute[] the value of the franchises held by other franchisees, and inevitably lead[] to [GPI's] loss of reputation[.]" (Pl.'s Moving Br. 20.) In the Third Circuit, such losses constitute irreparable injury. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.") (quoting *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)); *ADP, LLC v. Trueira*, No.18-3666, 2018 WL 3756951, at *25 (D.N.J. Aug. 8, 2018) ("New Jersey courts recognize that 'the diversion of a company's customers may [ ] constitute irreparable harm, [and that] [t]his is so because the extent of the injury to the business as a result of this type of conduct cannot be readily ascertained . . . .").

Patriot Goose counters that no irreparable harm exists insofar that "GPI has no apparent means to operate in [Patriot Goose's] geographic area including to serve [Patriot Goose's] customers." (Def.'s Opp'n Br. 2.) This is so because GPI allegedly does not maintain a corporate or franchise location in the states of Massachusetts or Rhode Island; rather, GPI's nearest location is in Pennsylvania located approximately 230 miles from Patriot Goose's business operations. (*Id.*) Patriot Goose's position is unavailing. The Complaint alleges that "[GPI] has elected to delineate [the] particular geographic scope [outlined in the non-compete clause] because the Protected Territory, including the 150 [mile] radius from an approved location, *has a nexus to the driving distance able to or typically covered by franchisees on their routes*." (Compl. ¶ 63, n.2 (emphasis added).) And again, Defendants' argument appears to be more focused on the non-compete provision's proper *scope*—not whether GPI has in fact suffered irreparable harm by Patriot Goose's alleged breach.

The Court, therefore, finds that GPI has come forward with a sufficient showing of irreparable harm to satisfy the second element of injunctive relief.

## C.    Balancing the Hardships

Having found that the gateway factors support a preliminary injunction, the Court considers the parties' competing claims of hardship. The third task a trial court must address in its preliminary injunction analysis is the balance of hardships to the respective parties. *Opticians Ass'n*, 920 F.2d at 197. For this inquiry, in considering the balance of hardships to the respective parties, the court must remain mindful that a "harm which follows a defendant who willfully breaches a contractual undertaking is not a basis for denying" a preliminary injunction. *Jiffy Lube*, 834 F. Supp. 2d at 693. When addressing violations of a non-compete provision by a former franchisee, the balance of equities weigh against a former franchisee, even where it causes a loss

of business, when the harm was "self-inflicted and a predictable consequence of [its] own willful acts of breaching [its] contractual agreements." *Iceny USA, LLC v. M&M's, LLC*, 421 F. Supp. 3d 204, 223 (D. Md. Oct. 10, 2019); *see also Trico Equip., Inc. v. Manor*, No. 08-5561, 2009 WL 1687391, at *9 (D.N.J. June 15, 2009) (explaining that harm to defendant from enforcement of non-compete clause was "self-inflicted and not significant enough" to deny the plaintiff's requested relief).

In breaching the terms of the non-compete clause, GPI argues that it was foreseeable, or at least should have been foreseeable, to Patriot Goose that a preliminary injunction would follow. *Opticians Ass'n of Am.*, 920 F.2d at 197 (noting that a defendant can "hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction on itself").

Despite Patriot Goose's seemingly voluntary breach, the Court must consider the competing hardships posed by both parties. On one hand, GPI asserts that it will suffer considerable hardship through loss of goodwill, loss of potential customers in the Protected Territory, and difficulty in having customers serviced by an existing or new franchisee in the former territory. (Pl.'s Moving Br. 21.) On the other hand, Patriot Goose contends that it will suffer greater harm than GPI if a preliminary injunction is granted. In so doing, Patriot Goose notes that it is not operating its business "near GPI's protected territory" and that its four employees will face the loss of employment and benefits if a preliminary injunction is granted. (Def.'s Opp'n Br. 27-28.)

On balance, the Court finds the potential hardships weigh in favor of GPI. While Patriot Goose asserts that it will suffer economic losses if a preliminary injunction is granted, this argument fails to consider that Patriot Goose can run a goose control business in new territories— so long as they are not within the geographic restrictions of the non-compete clause. GPI has also

raised a legitimate argument regarding the loss of customers in the Protected Territory. *HouseMaster*, 2022 WL 2373874, at *9 (citing *N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1231 (M.D. Fla. 2002) (concluding that the balance of hardships favored plaintiff-employer where former employee's active solicitation of customers interfered with plaintiff's relationships with its established customers).)

Furthermore, GPI notes that it tried to amicably resolve its dispute with Patriot Goose before resorting to this lawsuit. (Compl. ¶¶ 43-44.) Patriot Goose could have continued to operate as a franchisee, as it did for approximately nine years, but instead chose to move forward with its competing business. (*Id.*) *See Cap. One Fin. Corp. v. Sykes*, No. 20-763, 2021 WL 2903241, at *15 (E.D. Va. July 9, 2021) (noting that "any potential hardship [d]efendants face have been created by their own willful acts in breaching the [agreement]" and such "'self-inflicted' harm is not enough to tip the equities in their favor"); *NaturaLawn of Am., Inc. v. W. Grp., LLC*, 484 F. Supp. 2d 392, 402 (D. Md. 2007) (noting that defendants chose to ignore the obligations in the franchise agreement altogether and, instead, to move forward with a competing business, thereby "rolling the dice" that injunctive judicial relief would permit them to continue their evident wrongdoing during the pendency of the case).

Patriot Goose's gamble and decision to violate the terms of the Franchise Agreement should not, in retrospect, preclude GPI's ability to enforce the plain terms of their arms-length agreement. Thus, the Court finds that the balance of equities weighs in favor of granting the injunction and that any harm Patriot Goose may suffer as a result of enforcing the non-competition clause is of its own making and significantly outweighed by the harm to GPI.

16

**D.     The Public Interest**

The final consideration in the preliminary injunction analysis is what will best further the public interest. *Opticians Ass'n of Am.*, 920 F.2d at 197. Generally, where a finding is made in the affirmative as to the first three factors, the court will find an injunction will also be in furtherance of the public interest. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994) (citing *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1438 (3d Cir. 1994)). Courts have found that the public has an interest in preventing deception and confusion in the marketplace. *SK & F, Co. v. Premo Pharm. Labs.*, 625 F.2d 1055, 1067 (3d Cir. 1980) ("[P]reventing deception of the public is itself in the public interest."). The public is also served when legitimate and reasonable non-solicitation provisions are enforced. *Menasha Packaging Co., LLC v. Pratt Indus., Inc.*, No. 17-75, 2017 WL 639634, at *11 (D.N.J. Feb. 15, 2017); *see also Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 606 (E.D. Tex. 2021) ("Enforcing contracts serves the public interest.") (citations omitted); *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 229 (D.N.J. 2009) ("[T]he public has a great interest in upholding and enforcing freely negotiated contracts entered into between employees and their employers") (citation omitted).

Here, GPI has shown both a likelihood of success on the merits and irreparable injury and therefore it follows that the public interest will favor GPI. With these considerations in mind, the Court finds that the issuance of a preliminary injunction promulgates the public interest in protecting the public from confusion, protects the interests of the Franchised Business, and ensures that valid non-competition clauses are enforced. Thus, the Court finds that the public interest weighs in favor of granting injunctive relief.

E.        **Scope of the Injunction**

Now that the Court has found GPI is entitled to a preliminary injunction, the last step is to determine its proper scope. Patriot Goose challenges the scope of the non-compete clause in two respects. First, Patriot Goose argues that the language prohibiting its involvement in any business that involves "the inhabitation of property by, and control of birds" is overly broad as it is not circumscribed to the business in question here; particularly, a business involved in geese control through the use of trained border collies. (Def.'s Opp'n Br. 18.) Second, Patriot Goose argues that the geographic limitation of prohibiting Defendants' competing business within 150 miles of the Approved Location or Protected Territory is overbroad as it prevents Oren from working in any business involved in the control of birds "throughout the vast majority of the east coast." (*Id.* at 18-19.)

As a preliminary matter, GPI accepts that the language of the non-compete agreement can be amended to effectuate its intended purpose. (Pl.'s Reply. Br. 10.) GPI proposes that the language can be altered to restrict Patriot Goose more narrowly "from operating a geese control business using trained border collies within the same territory as when they were an authorized franchisee." (*Id.*) That said, the Court concludes that GPI's proposed alternative language is acceptable and represents a reasonable narrowing of the non-compete provision.

That leaves the more difficult question: what is the proper geographic scope of the non-compete clause? In this regard, the Court must balance both the interests of the franchisor and the franchisee. *ADP, LLC v. Rafferty*, 923 F.3d 113, 121 (3d Cir. 2019) (noting that a court can blue pencil restrictive covenants to protect a business's trade secrets, customer relationships, and confidential information while striking "devastating effects" on the other party (quoting *Solari*

*Indus., Inc. v. Malady*, 264 A.2d 53, 61 (N.J. 1970)). The Court has reviewed the terms of the

Franchise Agreement and the enjoinment GPI seeks. The Court orders as follows:

- **Time Limit.** The Court will grant a preliminary injunction that prohibits Patriot Goose and any and all employees, agents, or representatives of Defendants, any persons acting in concert with Defendants or any other person with notice from violating the terms of the non-compete clause for a period of **2 years**.

- **Radius.** The Court enjoins Patriot Goose and any and all employees, agents, or representatives of Defendants, any persons acting in concert with Defendants or any other person with notice from operating a competing business within a radius of **50 miles**[10] from the Protected Territory.

- **Restrictions.** The Court enjoins Patriot Goose and any and all employees, agents, or representatives of Defendants, any persons acting in concert with Defendants or any other person with notice from:

  (a) Using the Geese Police Marks in the operation of any business, including, but not limited to, the business currently being operated in the Protected Territory.

  (b) Displaying, using, or otherwise showing any signage with the Geese Police Marks, or any elements thereof, in the operation of any business, including, but not limited to, the business currently being operated in the Protected Territory.

  (c) Identifying themselves as being currently or formerly associated with GPI, including in any contract, advertisement, or marketing related to a geese control business.

---

[10] The Court is not aware of any New Jersey case which imposed a per se limit on the geographic scope that a covenant not to compete may cover, and some courts have enforced non-compete clauses with wide geographic scopes. *See A. Hollander & Son, Inc. v. Imperial Fur Blending Corp.*, 66 A.2d 319, 326 (N.J. 1949) (enforcing covenant "in any state east of the meridian passing through St. Louis, Missouri"); *Auto. Club of S. N.J. v. Zubrin*, 12 A.2d 369 (N.J. Super. Ct. Ch. Div. 1940) (covenant covering large portion of state unenforceable where former employer did not conduct business in some parts of this area); *Sunbelt Rentals, Inc. v. Love*, No. 20-17611, 2021 WL 82370, at *47 (D.N.J. Jan. 11, 2021) ("The fact that the geographic scope will be applied nationally given the facts of this case does not render it unreasonable."). Weighing the competing interests presented in this case, the Court finds that a 50-mile geographic scope from Patriot Goose's previously approved territory is a reasonable application of the non-compete clause. To the extent that Patriot Goose can provide *compelling* and legitimate business reasons for a radius narrower than 50 miles, it may petition the Court accordingly.

(d) Taking any action in violation of the post-expiration obligations in the Franchise Agreement.[11]

In addition, as of the date of this Memorandum Opinion, it appears that Patriot Goose is still engaged in a competing business within its formerly approved territory. To make sure that a franchisor receives "the full benefit of its bargain," a court may toll a period in a restrictive covenant where it is clear that a party remains in clear violation of the agreement. *See ADP, LLC v. Pittman*, No. 19-16237, 2019 WL 5304148, at *7 (D.N.J. Oct. 18, 2019). As such, the Court finds it is appropriate to toll the restrictive period set forth within the non-compete clause until January 1, 2026.

**F.      Injunction Bond**

Under Federal Rule of Civil Procedure 65(c), a preliminary injunction may issue once "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). GPI submits that an appropriate bond amount would be Defendants' approximate net proceeds for one-year in the amount of $350,000.[12] The Court agrees that this amount is sufficient to cover damages that Patriot Goose may suffer if it has been wrongfully enjoined. The Court, therefore, will order GPI to post a bond amount of $350,000 prior to the injunction taking effect.

---

[11] For clarity, Patriot Goose shall not take any action in violation of the post-expiration obligations in the Franchise Agreement to the extent that the same 50-mile geographic restriction applies from the Protected Territory. Any post-expiration restrictions that seek to prevent Patriot Goose from competing within 150 miles of "any business operating under the Proprietary Marks" is overly broad and shall not be enforced. (*See, e.g.*, Franchise Agreement, §§ 16.2.3.4, 16.3.4.)

[12] Defendants request that the Court impose a four-fold increase in the bond amount that GPI suggested in its Motion—requesting a $1.4 million bond be imposed—on speculation that this matter will require at least four years to litigate. (Def.'s Opp'n Br. 32-33.) The time between the issuance of an injunction and a decision on the merits should not be this protracted, so the Court finds a $1.4 million bond to be unreasonable. Should this litigation become protracted, Defendants may request an appropriate increase in the bond amount.

IV.    **CONCLUSION**

For the above reasons, the Court finds that GPI made the requisite showing that it is entitled to a preliminary injunction. The Court will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE